UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The Marbury Law Goup PLLC | ) | |
| 11800 Sunrise Valley Drive | ) | |
| Suite 1000 | ) | |
| Reston, VA 20191, | ) | |
| Plaintiff | ) | Case: 1:09-cv-01402 |
| v. | ) | Assigned to Kollar-Kotelly, Colleen |
| | ) | |
| Bernard J. Carl | ) | |
| 2340 Wyoming Avenue NW | ) | |
| Washington DC 20008, | ) | |
| Defendant. | ) | |

### Counter-Plaintiff Carl's Motion for Relief Under Rule 60(b)

Counter-Plaintiff, BERNARD CARL, hereby moves this honorable Court to grant relief under FRCP 60(b) by determining that the foreign default judgment secured by Counter-Defendant Marbury Group PLLC in a collection suit in Virginia shall not have the effect in litigation in the District of Columbia of barring or precluding Counter-Plaintiff's Carl's claims for malpractice against said Counter-Defendant. In support of this Motion, Carl directs this honorable Court to the attached Memorandum.

Respectfully submitted

*/s/ Bernard J. Carl*

Bernard J. Carl,

Defendant Counter-Plaintiff, *pro se*

**RECEIVED**

DEC 23 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Bernard J. Carl, *pro se*

2340 Wyoming Avenue, NW

Washington, DC 20008

Telephone:   202 667 4667

Fax:             202 667 4972

Email:         bcarldc@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 23 day of December 2010, a copy of the foregoing was served by first-class mail, postage prepaid, upon:

| | | |
|---|---|---|
| John Mardula | *and* | Dennis J. Quinn |
| The Marbury Law Group, PLLC | | Carr Mahoney PC |
| Suite 10000 | | Suite 500 |
| 11800 Sunrise Valley Drive | | 1615 L Street, NW |
| Reston, VA 20191 | | Washington, DC 20006 |

*/s/ Bernard J. Carl*

Bernard J. Carl

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The Marbury Law Goup PLLC | ) | |
| 11800 Sunrise Valley Drive | ) | |
| Suite 1000 | ) | |
| Reston, VA 20191, | ) | |
| Plaintiff | ) | Case: 1:09-cv-01402 |
| v. | ) | Assigned to Kollar-Kotelly, Colleen |
| | ) | |
| Bernard J. Carl | ) | |
| 2340 Wyoming Avenue NW | ) | |
| Washington DC 20008, | ) | |
| Defendant. | ) | |

## Memorandum in Support of Motion for Relief Under Rule 60(b)

### Introduction

Counter-Plaintiff Carl has promptly responded to each of the Court's requests for memoranda -- on issues including Counter-Defendant *Marbury's* motion voluntarily to dismiss its own Complaint, the presence of party diversity, satisfaction of the minimum amount in dispute for diversity jurisdiction and, most recently, *Marbury's res judicata* argument. However, it now seems that the forest may have been lost for the trees. *Marbury* has relied on the finality of a default judgment issued by the Fairfax County Circuit Court in a collection case as the sole basis for blocking Carl's malpractice claims in this Court.[1] Since the very beginning of this litigation, Carl has argued that *Marbury*

---

[1] *Marbury* has not been entirely consistent on this point. After this Court refused to allow the voluntary dismissal of *Marbury's* Complaint unless it were determined that the counterclaims Carl had already asserted could be independently litigated (even after the dismissal of *Marbury's* Complaint), *Marbury* appeared to accept Carl's view that his counterclaims met this test. As *Marbury* explained, "Carl asserts that his counterclaims can be independently litigated. As such there is no impediment to the voluntary dismissal of [*Marbury's*] Complaint...." *Plaintiff's Memorandum in Support of Motion for Voluntary Dismissal of Complaint* at p. 2. In its pleading, *Marbury* appeared to be arguing that, because its suit for fees did not dispose of the issues raised in Carl's counterclaims, a voluntary dismissal of its Complaint to enforce its default judgment would be appropriate. Based on this argument, *Marbury's* Complaint was dismissed. Now, having procured that dismissal, *Marbury* appears to be taking the opposite tack.

1

RECEIVED
DEC 2 3 2010
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

should not be able to use this default judgment to foreclose Carl's malpractice claims in this Court and that doing so in the circumstances of this case would offend basic notions of fairness and due process.' That dispute has remained a central element of this case.

### Relief Sought

To bring this case back to its beginnings, Carl hereby respectfully requests that the Court consider his longstanding arguments in the nature of a collateral attack on the Fairfax County Circuit Court's default judgment to be a request for partial and limited relief under FRCP 60(b).'

In most circumstances, relief from a default judgment would be sought from the court issuing that judgment. But, that is not always required. Courts in the District of Columbia have clearly recognized that they can and will, in appropriate circumstances, relieve a litigant from the effects of a foreign judgment under FRCP 60(b) or its local equivalent.

In *Threatt v. Winston*, 907 A.2d 780 (DC 2006), the DC Court of Appeals treated a similar collateral attack on a foreign judgment as a motion for relief under the DC equivalent to FRCP 60(b), citing several examples of such "collateral attacks on foreign judgments." *Id.* at 787. The Court made clear that "a foreign judgment sought to be enforced in DC [would] be subject to the same defenses, or proceedings for reopening or vacating, or staying" as would any judgment rendered by a local court. *Id.* at 788. The Court went on to explain that "the proper way to attack [such] a foreign judgment is by filing <u>in the receiving jurisdiction</u> a motion or independent action under Rule 60," *Id.* at 788 (emphasis supplied), and that "when the beneficiary of the judgment ... relies on it as a basis for additional relief, the person against whom the relief is sought can defend on

---

' Carl has also suggested that a violation of his right to a jury trial may have been implicated by the summary procedures employed and lack of notice afforded by the Fairfax County Circuit Court in *Marbury*'s collection case.

' ***FRCP 60(b)*** provides in relevant part that:
> "On motion and just terms, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; ... (5) applying [the judgment] prospectively is no longer equitable; or (6) any other reason that justifies relief."

the grounds that the judgment is ... not justly enforceable." *Id.* at 789.' *See also Restatement* §80 ("When a judgment is relied upon as the basis of a ... defense in a subsequent action, relief from the judgment may be obtained by appropriate pleading and proof in that action if other means of obtaining relief from the judgment are unavailable to the applicant or the convenient administration of justice would be served by determining the question of relief in the course of the subsequent action"), quoted at Id. At 789 n. 4.

It should be recalled that this case began with *Marbury's* attempt to enforce a foreign default judgment in the District of Columbia through this Court and that *Marbury* now seeks to secure additional relief based on that default judgment in the form of protection from the malpractice claims Carl has filed in this DC-based Court.

This is a particularly appropriate case for such relief for at least two reasons. First, Carl is no longer seeking to stay or defeat collection of the foreign judgment in question.' Rather, Carl is seeking relief from the Fairfax County Circuit Court's default judgment only to the extent it is being used as a shield to prevent Carl from pursuing a separate malpractice claim otherwise cognizable in this Court.' Hence the Court's action suggests no disrespect for the judgment rendered by the Virginia Court on the matter that was actually before it.

Second, the bases for challenging a default judgment in Virginia appear to be far narrower than those applicable under the District of Columbia and Federal rules.' The Federal Courts have warned that "[i]n the case of a Rule 60(b) motion seeking to set aside a default judgment, our judicial preference for trials on the merits demands that the courts resolve any doubts as to the propriety of giving relief to the moving party." *Bonney v. Roelle*, 117 F.3d at 1413, U.S. App. Lexis 18179 at p. 16 (4th Cir. 1997). In contrast, the only statutory basis for vacating a default in Virginia appears to be clear proof that the

---

' *Marbury* has not offered any dispositive precedents from this Court showing that the law of preclusion applicable in Virginia rather than the equivalent law of the District of Columbia should apply to Carl's separate claim in this Court.
' *Marbury* has already collected most of its judgment by filing and enforcing a lien on nearly $100,000 in proceeds due Carl from the Logan bankruptcy case in which *Marbury* so poorly represented him.
' Issues of this Court's jurisdiction seem to have been resolved in Carl's favor.
' It was *Marbury* that chose to file this case in two District of Columbia courts, hence subject itself to the rules of the courts in that jurisdiction.

party seeking the default committed a fraud upon the Court. *Va. Code* §8.01-428(A)(1). Absent from the Virginia rules concerning setting aside defaults are several criteria implicit in the DC and Federal rules, including surprise, the excusable neglect of a litigant, manifest unfairness or even a patent lack of due process.[1]

## The Pre-Conditions for Rule 60(b) Relief

Rule 60(b) relief requires that the moving party make a threshold showing that he has acted diligently, that there would be no undue prejudice to the holder of the judgment under attack and that the moving party has a potentially meritorious defense that he would otherwise be unable to present. *Bonney v. Roelle*, 117 F.3d 1413, U.S. App. Lexis 18179 at p.16 (4th Cir. 1997); *Augusta Fiberglass Coating, Inc. v. Fodor Contracting Corporation*, 843 F.2d 808, 811-12 (4th Cir.1988). First, it would be hard to say that Carl has not acted both promptly and diligently in pursuing his rights in three separate courts[2]

---

[1] Carl did seek to vacate the Virginia default judgment based on the extraordinarily narrow criteria available. (A copy of Carl's motion is attached hereto). Carl argued, *inter alia*, that *Marbury* had committed a fraud upon the Court by submitting a sworn affidavit in support of its motion for a default attesting under oath to the fact that there were "no offsets" to the claim on which it was seeking judgment. In this Court, however, *Marbury* has strenuously argued that Carl's arguments (as expressed in his draft Answer) are just such "offsetting" claims and that is exactly why they should be barred in this Court. It is hard to see how *Marbury* can have it both ways once again. See note 1, *supra*.

    At the time it sought a default, *Marbury* knew full well (from having a copy of Carl's draft Answer) that Carl had offsetting claims. Yet, the Virginia Court, in a ruling from the bench, found that the word "offsets" meant only that *Marbury* had not received any payments from Carl since filing its Complaint. This ruling did not rely on any identified rule or precedent and appears to utterly pervert the common meaning of the relevant language. **Black's Law Dictionary** defines "offset" as meaning the same as "setoff" and defines "setoff" as "*[a] claim made by someone who allegedly owes money, that the amount should be reduced because the other person owes him money. This is often raised in a counterclaim filed by a defendant in a lawsuit.*" Other legal dictionaries define 'offset" as "[a] *contrary claim or demand that may cancel or reduce a given claim; a counterclaim*" (**West's Encyclopedia of American Law** (2010)) or "*the deduction by a debtor from a claim or demand of a debt or obligation; such offset is based in a counterclaim against the party making the original claim*" (Gerald & Kathleen Hill, **The Peoples' Law Dictionary** at Law.com (2010)(Emphasis supplied). *Webster's Dictionary* defines "offset" as anything that "*serves to counterbalance or to compensate for something else [such as] either of two balancing ledger items*" and "set-off" as "*the reduction or discharge of a debt or claim by setting off a distinct claim in favor of the debtor or party who is the object of the first claim (as in a lawsuit) [as well as "the offsetting claim itself"* (**Merriam Webster's Collegiate Dictionary** (11th ed.) (NY 2004)) (Emphasis supplied). None of these definitions seems consistent with the Fairfax County Circuit Court's apparent misreading of the plain language of *Marbury's* sworn statement.

[2] Carl has sought such relief in the cases filed by *Marbury* in the Fairfax County Circuit Court, the Superior Court of the District of Columbia and this Federal District Court.

4

– at least since he became aware of what had happened in the Fairfax County Circuit Court." Second, *Marbury* would not be prejudiced "beyond that suffered by any party which loses a quick victory." *Bonney v. Roelle*, 117 F.3d at 14xx. *Marbury* has already collected the vast majority of its default judgment, and Carl is no longer challenging that judgment *per se*. The only burden *Marbury* would suffer would be the need to defend itself against malpractice charges for a first time. And, the specificity of the charges reflected in Carl's malpractice counterclaims fairly evidence their potential merit.

## The Standards for Rule 60(b) Relief

Once the pre-conditions for granting Rule 60(b) relief are met, the moving party then has the duty to show that he meets at least one of the criteria required by the Rule for such relief. The Courts have been particularly liberal in applying these criteria in motions to set aside default judgments. See, *Bonney v. Roelle*, 117 F.3d 1413, 1997, U.S. App. Lexis 18179 at p. 16 (4th Cir. 1997); *Augusta Fiberglass Coating v. Fodor Contracting*, 843 F.2d 808, 811-12 (4th Cir.1988); *US v. Moradi*, 673 F.2d at 728 (4th Cir. 1982). Carl's case meets at least two of those criteria, namely: (1) mistake, inadvertence, surprise, or excusable neglect and (5-6) applying [the judgment] prospectively is no longer equitable."

### *FRCP 60(b) (1) – The Presence of Excusable Neglect*

This Court no doubt wonders how a former lawyer could have allowed the time for answering a complaint to have elapsed without filing an answer, as appears to have happened in this case. That is a legitimate question, but one for which there has not yet been a proper forum in which Carl should have provided an answer. Because the question hangs over this case like a dark cloud, it might as well be answered here."

---

" The matter of Carl's diligence is further explored in the section of this memorandum concerning "The Presence of Excusable Neglect."

" The criteria governing fraud and misconduct by the party that secured the judgment under FRCP 60(b)(3) might also be applicable, see note 8, *supra*, as might the general equitable power of the court under FRCP 60(b)(6).

" The relevant facts are also set forth in the attached sworn declaration.

5

At the time *Marbury* was threatening its collection action, Carl retained Virginia counsel to represent him in both the *Marbury* dispute and an unrelated tax matter.[a] Counsel actively participated in having a draft of an answer ready to respond to *Marbury's* complaint in a timely manner. Carl provided counsel with a copy of *Marbury's* complaint when he received it.[b] It was Carl's belief that counsel would monitor the case on his behalf and make such filings as were required in a timely manner.[c]

The next update Carl received on the *Marbury* case was a communication from counsel explaining that a default judgment had been entered against him. However, Carl only learned of the default judgment after the time to vacate the judgment had expired and the time to notice an appeal from the judgment had run.[d] Counsel then refunded a portion of Carl's fees and withdrew from representing him.

Thus, contrary to *Marbury's* snide insinuations, Carl did not ignore the threatened *Marbury* litigation nor did Carl make a conscious decision not to respond to *Marbury's* lawsuit. Carl acted in a prudent and responsible manner. Had the most basic elements of professional courtesy been respected by *Marbury's* making even a token effort to advise Carl of its filing of a motion for a default, the entry of the default or the deadlines for challenging or appealing that default, Carl would have had the time needed to pursue his claim of malpractice. Instead, with an alacrity that would astonish most litigants, *Marbury* managed to go from serving its complaint (on April 27, 2009) to securing a default judgment on May 29 (32 days later) and then what it now claims to be an unassailable final judgment on June 29, 2009 (for a total of 62 days) on a claim amounting to more than $135,000. And, *Marbury* achieved that objective based on a

---

[a] Carl also sought to have this attorney take over the Logan bankruptcy litigation, but he, instead, referred that matter to Mr. Carter. Mr. Carter, contrary to the implications in *Marbury's* motion, continues to represent Carl to this day and would be a witness in his malpractice action.

[b] Carl's counsel advised that, as an out-of-state defendant, Carl should have at least 90 days to respond to *Marbury's* summons. However, *Marbury's* complaint was served on April 27 and, by May 29, only 32 days later, the Fairfax County Circuit Court had already entered a default judgment against Carl.

[c] Carl's draft Answer had been completed and signed off on by Carl, who believed it was ready to be filed.

[d] When Carl confronted his counsel, counsel's only answer was that he had not expected a default to be sought or entered without any notice. See, *Threatt*, 907 F.2d at xxx.

8

single legal notice (initial service of the complaint) to defendant (with even that notice not having been served on the defendant personally).

The role of Carl's counsel is a particularly important factor here because there is considerable precedent in cases governing the Virginia courts for the notion that a default caused primarily by the negligence of counsel should not have the dispositive effect suggested by *Marbury*. See *Bonney v. Roelle*, U.S. App Lexis 18179 at pp. 24-5 (4th Cir. 1997) ("When the party is blameless his attorney's negligence qualifies as a 'mistake' or as 'excusable neglect under Rule 60(b) (1)');" *Augusta Fiberglass Coating v. Fodor Contracting*, 83 F. 2d 808, 811 (4th Cir. 1988) ("Justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney," quoting *United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982).[a]

### *FRCP 60 (b)(5-6) – The equity of prospective application of the Fairfax County Circuit Court default judgment to bar Carl's malpractice claim in this Court*

*Marbury* acknowledges that it knew full well that Carl had defenses to its collection action in the Fairfax county Circuit Court and that Carl had at least a nascent claim for malpractice that he was prepared to assert and capable of litigating.[b] Moreover, service was accomplished not on Carl personally but on a household employee (Carl being absent from his residence at the time) and Carl did not receive notice of any of the other pleadings or orders filed in the Fairfax County litigation. It is clear from the many letters, faxes and emails *Marbury* has attached as exhibits to its motions, that it had numerous ways to give actual notice to Carl had it chosen to do so, but it did not. Rather, it sought and achieved the rudest kind of legal ambush.

---

[a] In *Bonney*, the Court found excusable neglect because "the defendants' failure to respond timely to the respective summonses and complaints resulted solely from the erroneous advice of their attorney." *Bonney v. Roelle*, 117 F.3d at 1413, U.S. App. Lexis 18179 at p. 25.

[b] In *Augusta Fiberglass*, the court excused a failure to make a required filing (in a case remarkably similar to the *Marbury* collection matter) on the grounds that "it was the attorney who assumed his counterpart would give a commendable but unrequired notice before seeking the default judgment." Under these circumstances, "Justice ... demands that a party not be disadvantaged by the errors or neglect of his attorney." *Augusta Fiberglass*, at 843 F.2d at 812.

[c] Interestingly, *Marbury* admits that if the case had "lasted another eight or nine months – [that would have been] enough time for Carl to have ... raised his [malpractice claim] ... in the collection action." *See Marbury Law Group, PLLC's Reply to Plaintiff's Opposition to Marbury's Motion for Summary Judgment* at pp. 2-3. And, certainly, had such time been available, Carl would have.

7

The questions potentially posed here are whether a $135,000 default judgment which is entered within 32 days of service of the Complaint, which is final and no longer subject to appeal 62 days after such initial service and which is based on: (i) a motion for default being filed, (ii) a default judgment being issued, (iii) the time for vacating such a default judgment expiring, (iv) the default judgment becoming a final judgment, and (v) the period for appealing that judgment expiring – **all accomplished without the plaintiff or the Court making ANY effort whatsoever to provide notice of any of those intervening and potentially dispositive events to the defendant – even though the defendant's contact details were well known\*** – satisfies even the most basic notions of fair play and whether such a flawed process may have deprived Carl of his rights to due process and a trial by jury. See, e.g., *Fox v Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988).

## Conclusion

Surely, the rush to judgment evidenced by this remarkable timeline and the *Star Chamber* like proceedings that led to a final judgment being entered with little or no notice to the defendant raise difficult questions of fairness and due process that this Court should address if *Marbury's res judicta* argument is otherwise deemed to be availing.

For the foregoing reasons, Carl respectfully requests that this Court exercise its authority under FRCP 60(b) to limit the application of the default judgment rendered in the Fairfax County Circuit Court to the extent that default judgment may might otherwise prelude Carl's litigation of his separate claim for legal malpractice before this Court.

Respectfully submitted

*[signature]*

Bernard J. Carl,

Defendant Counter-Plaintiff, *pro se*

---

\* As of this date, counsel had still not entered an appearance on Carl's behalf.

Bernard J. Carl, *pro se*

2340 Wyoming Avenue, NW

Washington, DC 20008

Telephone:   202 667 4667

Fax:             202 667 4972

Email:          bcarldc@aol.com