# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARBURY LAW GROUP, PLLC,

        Plaintiff/Counter-Defendant,

v.

BERNARD J. CARL,

        Defendant/Counter-Plaintiff.

**Civil Action No.** 09-01402 **(CKK)**

# MEMORANDUM OPINION
(July 21, 2013)

Plaintiff/Counter-Defendant Marbury Law Group, PLLC ("Marbury") has moved for summary judgment on counterclaims brought by Defendant/Counter-Plaintiff Bernard J. Carl ("Carl"), who is proceeding *pro se* in this action.[1] Carl's three counterclaims – the only claims that remain at issue in this case – sound in legal malpractice and breach of fiduciary duty and all challenge, in one way or another, the adequacy of Marbury's legal representation of Carl in connection with two prior legal actions. Upon consideration of the parties' submissions, the applicable authorities, and the record as a whole, the Court shall GRANT Marbury's motion for summary judgment and dismiss this case in its entirety.[2]

---

[1] Although Carl is proceeding in this action *pro se*, he is an attorney and is therefore not entitled to the same level of solicitude often afforded non-attorney litigants proceeding without legal representation. *See Baird v. Snowbarger*, 744 F. Supp. 2d 279, 286 (D.D.C. 2010); *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009). While the Court remains mindful of Carl's contention in his opposition brief that he has not actually practiced law for nearly three decades, this does not change the fact that Carl "is not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have a knowledge of the legal system and need less protections from the court." *Richards v. Duke University*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007), *aff'd*, No. 07-5119, 2007 WL 4589770 (D.C. Cir. Aug. 27, 2007).

[2] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Counter-Pl.'s First Am. Countercl. ("Am. Countercl."), ECF No. [33]; Marbury's Ans. and Grounds of Defense to First Am. Countercl. ("Marbury Ans."), ECF No. [34]; Counter-Def.'s Stmt. of Material Facts in Supp. of Renewed Mot. for Summ. J. ("Marbury Stmt."), ECF No. [73] (with exhibits); Counter-Def.'s Mem. in Supp. of

1

# I. BACKGROUND[3]

On March 6, 2009, Marbury brought suit against Carl in the Fairfax County Circuit Court of the Commonwealth of Virginia, seeking to collect unpaid fees for legal services that it provided to Carl while representing him in connection with two legal actions. When Carl failed to defend against the Virginia action, the Fairfax County Circuit Court entered a default judgment against him. *See* Order of J. as to Def. Bernard J. Carl, *Marbury Law Grp., PLLC v. Carl*, Civ. Action No. 2009-3375 (Va. Cir. Ct. May 29, 2009). Shortly thereafter, Marbury commenced this action, seeking to register the default judgment with this Court. *See* Compl., ECF No. [1]. On October 15, 2009, Carl filed a responsive pleading, answering the allegations in the Complaint and asserting a total of seven counterclaims sounding in breach of contract, breach of fiduciary duty, and legal malpractice. *See* Countercl., ECF No. [7].

Subsequently, Marbury realized that this Court lacked jurisdiction to register the default judgment entered by the Fairfax County Circuit Court and moved this Court to dismiss the Complaint. *See* Counter-Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. [12-1], at 1-2. Contemporaneously, Marbury moved this Court to dismiss Carl's counterclaims, contending that Carl's claims were either barred by the doctrine of *res judicata* or failed to state a claim for relief. *See* Counter-Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. [13-1]. On December 3, 2009, having received no response from Carl, the Court granted both motions as conceded and dismissed the entire action without prejudice. *See* Order (Dec. 3, 2009), ECF No. [15]; Mem. Op. (Dec. 3, 2009), ECF No. [16].

---

Renewed Mot. for Summ. J. ("Marbury Mem."), ECF No. [73]; Counter-Pl.'s Mem. in Opp'n to Counter-Def.'s Renewed Mot. for Summ. J. ("Carl Opp'n"), ECF No. [75] (with exhibits); Counter-Pl.'s Stmts. of Facts ("Carl Stmt."), *see* ECF Nos. [75-2], [75-3], [75-4], [75-6]; Counter-Def.'s Reply to Counter-Pl.'s Opp'n to Counter-Def.'s Renewed Mot. for Summ. J ("Marbury Reply"), ECF No. [78]; Counter-Pl.'s Mot. for Leave to File a Second Response to Counter-Def.'s Renewed Mot. for Summ. J. ("Carl Sur-Reply"), ECF No. [79]; Affidavit of Bernard J. Carl ("Carl Aff."), ECF No. [79-1].

[3] The Court shall restate the factual and procedural background of this case as set forth in its [49] Memorandum Opinion (Aug. 1, 2011) and its [69] Order (July 29, 2012), to the extent here relevant.

However, on July 27, 2010, upon Carl's motion, the Court reconsidered and vacated its prior dismissal order. *See* Order (July 27, 2010), ECF No. [28]; Mem. Op (July 27, 2010), ECF No. [29]. Then, reaching the merits of the motions, the Court dismissed Marbury's Complaint for lack of subject matter jurisdiction, but held-in-abeyance Marbury's motion to dismiss Carl's counterclaims pending further briefing on the threshold question of whether the Court retained jurisdiction over those claims. *See* Order (July 27, 2010); Mem. Op (July 27, 2010).

On September 9, 2010, upon consideration of the parties' supplemental briefing, the Court agreed with the parties that it retains jurisdiction over Carl's counterclaims in light of the diversity of citizenship between the parties and the amount in controversy. *See* Order (Sept. 9, 2010), ECF No. [32]. On that same date, the Court further granted Carl leave to file amended counterclaims and denied Marbury's motion to dismiss Carl's counterclaims without prejudice, with leave to refile after tailoring the motion to speak to Carl's amended counterclaims. *See id.*

On September 9, 2010, Carl filed his First Amended Counterclaim, in which he narrowed his claims against Marbury to a total of three counterclaims—two sounding in legal malpractice and a third sounding in breach of fiduciary duty. *See* Am. Countercl. Each of Carl's three counterclaims challenge, in one way or another, the adequacy of Marbury's legal representation of his interests in connection with two legal actions: (a) a civil action in the United States District Court for the Eastern District of Virginia captioned *Carl v. BernardJCarl.com*, Civ. Action No. 07-1128 (E.D. Va.) (hereinafter the "Website Case"); and (b) a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Virginia captioned *In re Logan*, Case No. 07-12564 (Bankr. E.D. Va.) (hereinafter the "Bankruptcy Case"). In his First Counterclaim, Carl claims that Marbury committed legal malpractice in connection with the Website Case by failing to pursue legal rights on his behalf, failing to undertake necessary legal research, and

failing to meet minimum professional standards for legal representation. *See* Am. Countercl. ¶¶ 67-69. In his Second Counterclaim, Carl claims that Marbury committed legal malpractice in connection with the Bankruptcy Case by failing to be adequately prepared for discovery, failing to undertake necessary legal research, failing to file timely motions, and failing to meet minimum professional standards for legal representation. *See id.* ¶¶ 73-79. In his Third Counterclaim,[4] Carl claims that Marbury breached its fiduciary duty to him in connection with the Bankruptcy Case by failing to be adequately prepared for discovery, failing to undertake necessary legal research, failing to file timely motions, and failing to meet minimum professional standards for legal representation. *See id.* ¶¶ 80-86.[5]

On October 1, 2010, Marbury filed a Motion for Summary Judgment, which was opposed by Carl, and which argued that Carl's counterclaims should be dismissed because they are barred by the doctrine of *res judicata* and fail on the merits. *See* Counter Def.'s Mem. in Supp. of Mot. for Summ. J. , ECF No. [35]. On August 1, 2011, the Court denied summary judgment, finding that Marbury's motion failed to fully account for two important principles that circumscribe the reach of the preclusive effect of the default judgment entered by the Fairfax County Circuit Court – specifically, (1) the general rule that a party failing to assert a permissive counterclaim in a prior action ordinarily will not be barred from bringing a future suit on that claim, and (2) that all counterclaims are permissive under Virginia law. *See* Mem. Op. (August 1, 2011), ECF No. [49]. The Court declined to consider Marbury's alternative contention that Carl's counterclaims fail on the merits because Marbury failed to comply with the procedural requirements for presenting a motion for summary judgment in this Court. *Id.*

---

[4] Carl's Third Counterclaim is erroneously labeled as "Seventh Counterclaim."
[5] These statements of Carl's counterclaims should not be construed as anything more than a summary. The Court will describe the precise contours of Carl's allegations in greater detail *infra*.

On November 2, 2011, this Court entered a [55] Scheduling and Procedures Order that required the parties to designate experts and produce expert reports by no later than March 20, 2012, and to conclude all discovery by June 12, 2012. Soon thereafter, the parties filed a [56] Joint Discovery Plan according to which all expert depositions would be completed by June 4, 2012. The Court did not hear from the parties for the next seven months of the discovery period, and the Court therefore assumed that the parties were diligently pursuing discovery. When the discovery period closed on June 12, 2012, without either party having filed a discovery-related motion or seeking an extension of time, the Court reasonably assumed that the parties had completed discovery. On June 22, 2012, the Court held a Status Hearing to discuss post-discovery proceedings.[6]

Subsequently, Marbury filed a [64] Motion to Dismiss or in the Alternative, for Summary Judgment, which Carl opposed. On July 29, 2012, the Court denied Marbury's motion. *See* Order (July 29, 2012), ECF No. [69]. Marbury's primary argument was that the case should be dismissed for lack of prosecution in light of a settlement agreement that the parties apparently reached in April 2012 – two months before the close of discovery, whereby Carl appears to have waived and released his right to pursue his counterclaims subject to certain conditions – most notably, his right to take the deposition of a third party defendant, John McMahon ("McMahon"), by a date certain. Notably, despite this Court's express instructions, the parties had failed to inform the Court once they had reached the purported agreement to settle this case. *See* Scheduling & Procedures Order (Nov. 2, 2011), at 5 ("If the case settles in whole or in part, counsel shall promptly advise the Court."). Accordingly, the Court found that because it had

---

[6] Counter-Plaintiff failed to appear at the Status Hearing. The Court later learned that he was admitted to a hospital to receive medical treatment on or about June 18, 2012 (after the close of the discovery period and long after the Court-ordered deadline for the production of expert reports). Therefore, on July 29, 2012, the Court discharged its two [62/63] Orders to Show Cause directing Counter-Plaintiff to explain his absence.

never been presented with a copy of the settlement agreement, let alone endorsed it, and because Marbury did not ask the Court to enforce its terms, the settlement agreement was not an issue properly before the Court. *See id*.

The Court found significantly more compelling Marbury's alternative argument – namely, that summary judgment was appropriate because Carl failed to appoint an expert and expert testimony is required for all three of his counterclaims. *See id*. However, the Court ultimately declined to grant summary judgment on this basis on the record then before it, finding that neither party had provided the Court with any factual exegesis of the counterclaims sufficient to determine whether expert testimony is required. *See id*. This given, the Court ordered Marbury to refile its motion for summary judgment providing a comprehensive factual and legal analysis as to why Carl's counterclaims must fail in the absence of expert testimony. *See id.*

Shortly after the Court's July 29, 2012 Order, and before Marbury filed its renewed motion, Carl filed a [71] Motion for Extension of the Discovery Period, which requested a "limited" extension of the then expired discovery period solely for the purpose of completing the deposition of McMahon. The Court denied Carl's motion because, among other reasons, Carl had not even served his discovery requests upon McMahon until June 1, 2012 (less than two weeks before the close of discovery, despite the fact that the parties had executed the aforementioned alleged settlement agreement almost two months earlier) and because Carl did not request a response from McMahon until July 16, 2012 (over one month *after* the close of discovery). *See* Order (August 14, 2012), ECF No. [72]. Further, the Court observed that Carl inexcusably did not seek an extension of the discovery period from this Court until August 8, 2012 (almost two months *after* the close of discovery). The Court rejected Carl's argument that

his failure to complete discovery was due to the parties' entry into the settlement agreement. *See id.* ("This is tantamount to an admission that the parties, including Counter-Plaintiff, completely disregarded this Court's scheduling order and effectively granted themselves a stay.  This is impermissible.").  The Court reiterated a point it had made previously: "[W]hatever discovery the parties now have at their disposal is, so far as the Court is concerned, all the discovery they will have at their disposal when facing motions for summary judgment or at trial." *See id.* (citing Order (July 29, 2012), ECF No. [69]).  While Carl once again attempts to explain away his failure to timely pursue discovery in his brief submitted in opposition to the instant motion, the Court finds his renewed arguments neither appropriate nor availing. *See* Carl Opp'n at 3-7.

On August 17, 2012, Marbury filed its now pending [73] renewed motion for summary judgment on the issue of whether Carl's failure to appoint an expert is fatal to all of his claims, which Carl has opposed.  Further, on September 25, 2012, Carl filed a [79] motion requesting leave to file a sur-reply to Marbury's reply brief, which attaches a copy of the proposed sur-reply, and to which Marbury has not filed an opposition.  Because Carl's proposed sur-reply addresses certain arguments which Marbury raised for the first time in its opposition brief, the Court shall grant Carl's motion for leave and shall consider his sur-reply.  Marbury's motion for summary judgment is therefore fully briefed and ripe for adjudication.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477

U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

**B. Legal Malpractice**

**1. Choice of Law**

Because jurisdiction over Carl's legal malpractice claims is founded on diversity of citizenship, the Court must first determine which state law to apply. In their briefing in connection with the instant motion, neither party provided even a cursory choice of law analysis. Although Marbury cites nearly exclusively to District of Columbia cases, it appeared upon the Court's preliminary analysis that Virginia law should instead apply. For this reason, the Court issued an order directing that if either party objects to the application of Virginia law to Carl's counterclaims, that party shall file a notice stating that objection and the basis therefore. *See* Order (June 27, 2013), ECF No. [80].

Subsequently, Marbury filed a [81] notice representing that it has no objection to the application of Virginia law. Carl, however, filed a [82] notice asserting an objection to the application of Virginia law, arguing that District of Columbia law should apply. Marbury filed a [83] response to Carl's notice, as instructed by the Court. Upon consideration of these submissions, and the applicable choice of law rules, the Court determines that it shall apply Virginia law to Carl's counterclaims for the below reasons.

As jurisdiction over Carl's legal malpractice claims is founded on diversity of citizenship, the Court must apply this forum's choice of law rules – *i.e.*, the choice of law rules of the District

of Columbia. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). The District of Columbia uses "a modified 'governmental interests analysis' which seeks to identify the jurisdiction with the 'most significant relationship' to the dispute." *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (internal citations omitted).   Under this approach, the court considers the four factors outlined in the Restatement (Second) of Conflict of Laws § 145: (1) the place of where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile or place of incorporation of the parties; (4) the place where the relationship is centered.

Almost every factor weighs in favor of Virginia. Marbury is a firm that is organized under Virginia law, with its offices in Fairfax, Virginia. *See* Am. Countercl. ¶ 2. The two transactions that gave rise to this action occurred in (and gave rise to judgments from) two courts located in Virginia. *See id.* ¶¶ 6, 24. In fact, it was Carl's sale of property which he and his company owned in Virginia which gave rise to the Bankruptcy Case. *See* Pl. and Counter-Def. Marbury Law Group's Reply to Def. and Counter-Pl. Bernard J. Carl's Notice Regarding Use of Virginia Law, ECF No. [83], at 2. Further, the retainer agreement between Carl and Marbury was prepared by and signed by Marbury in Virginia, and all work was performed by Marbury in Virginia. *Id.* at 2-3. Indeed, it appears that the *only* consideration favoring the election of District of Columbia law would be Carl's residency in the District (and the resulting fact that Marbury's phone, mail, and e-mail communications with Carl were directed to him while he was located in the District). *See* Am. Countercl. ¶ 1; Counter-Pl. Carl's Notice Regarding Use of Virginia Law, ECF No. [82], at 2-4. However, this alone is insufficient to counterbalance the multitude of considerations favoring the application of Virginia law. *See, e.g. Nelson v. Nationwide Mortgage Corp.*, 659 F. Supp. 611, 615 (D.D.C. 1987) (choosing Virginia law for legal malpractice claim,

where firm was in Virginia and the only factor in favor of the application of District of Columbia law was the plaintiff's domicile).

The arguments asserted in Carl's notice of objection fail to convince the Court otherwise. For instance, Carl raises several comparisons between both his and Marbury's various contacts with the District of Columbia and Virginia generally. *See generally* Counter-Pl. Carl's Notice Regarding Use of Virginia Law, ECF No. [82]. While such a "contacts" analysis may be appropriate for a jurisdictional inquiry, they are inapposite for purposes of the instant choice of law determination. The Court likewise finds unavailing Carl's contention that the settlement agreement that the parties allegedly negotiated in connection with the instant case was to be governed by District of Columbia law. This action concerns Carl's counterclaims for legal malpractice; it is not an action for enforcement of the purported settlement of those counterclaims, which is an entirely distinct issue that the Court has already found is not properly before it. *See supra* Part I.

For all of the foregoing reasons, Virginia law shall be applied to Carl's malpractice and breach of fiduciary duty counterclaims. In any event, the Court notes that even if it were to apply District of Columbia law to Carl's counterclaims, an identical ruling would likely result, as the law in both jurisdictions regarding the need for expert testimony is essentially the same. *Compare cases discussed infra* Part II.B.2 *with Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C. 1985) ("Expert testimony must be presented to establish the standard of care 'unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge.'").

### 2. Legal Malpractice Claims under Virginia Law

Under Virginia law, a party alleging legal malpractice must prove that (1) an attorney-client relationship existed giving rise to a duty (2) that the attorney neglected or breached that duty, and (3) that the neglect or breach of the duty was a proximate cause of damages. *Gregory v. Hawkins*, 468 S.E.2d 891, 893 (Va. 1996). "Each of these elements is necessary to establish a *prima facie* case of legal malpractice, a mere allegation of negligence or breach of a duty being insufficient to support an action for legal malpractice." *Id.* (citing *Campbell v. Bettius*, 421 S.E.2d 433, 436 (Va. 1992)).

Furthermore, the Supreme Court of Virginia has held that "unless a malpractice case turns upon matters within the common knowledge of laymen . . . or upon rules which have ripened into rules of law . . . , expert testimony is required to establish the appropriate professional standard, to establish a deviation from that standard, and to establish that such a deviation was the proximate cause of the claimed damages." *Seaward Int'l, Inc. v. Price Waterhouse*, 391 S.E.2d 283, 287-88 (Va. 1990) (citing, as examples, *Easterling v. Walton*, 208 Va. 214, 218, 156 S.E.2d 787, 790-91 (1967) (expert testimony unnecessary to show negligence where surgeon left foreign object in patient's body), and *Spainhour v. B. Aubrey Huffman & Assoc.*, 237 Va. 340, 346, 377 S.E.2d 615, 619 (1989) (land surveyor was negligent as a matter of law due to failure to follow binding rules of law regarding hierarchy of inconsistencies in land description)). *Cf. Whitley v. Chamouris*, 574 S.E.2d 251 (Va. 2003) (finding expert testimony unnecessary to prove causation in legal malpractice involving "case within the case" evidence where plaintiff must present virtually the same evidence that would have been presented in the underlying action, and the expert testimony the attorney argued was necessary constituted only

predictions of what the jury would have concluded and improper opinion testimony of the legal merits of the relevant claims).

The class of legal malpractice claims falling within the "common knowledge" exception is exceedingly narrow. *See, e.g., McCabe v. Reed*, 55 Va. Cir. 67, 2001 WL 34037268, *4 (Va. Cir. Ct. Mar. 13, 2001) (finding that a missed statute of limitations deadline in an employment discrimination case involving complex procedural requirements required expert testimony); *accord Mavity v. Fraas*, 456 F. Supp. 2d 29, 33 (D.D.C. 2006) ("Examples of actions that fall within the common knowledge exception include allowing the statute of limitations to run, allowing entry of default judgment against a client, not instructing a client to answer discovery requests, failing to assert affirmative defenses, and billing a client for time not spent rendering services.") (applying District of Columbia law) (internal citations omitted).

This is because "without expert assistance, lay juries cannot understand most litigation issues, legal practices, or the range of considerations that influence the manner in which an attorney should act or advise." *Shortt v. Immigration Reform Law Inst.*, Civ. A. No. 1:11cv144, 2011 WL 4738657, *3 (E.D. Va. Oct. 3, 2011) (citations omitted). Therefore, in the "overwhelming majority" of legal malpractice cases, "standard of care, breach, and causation issues require expert testimony." *Id.* (citation omitted).

### III. DISCUSSION

Preliminarily, the Court pauses to make two overarching observations about the nature of Carl's submissions in this case. First, Carl's articulation of the allegations underlying his counterclaims are far from a model of clarity. The Amended Counterclaim states the claims in only the broadest of terms, and Carl's opposition brief and multiple statements of facts are disjointed and, at times, difficult to decipher. Second, to the extent that Carl has actually disputed the facts presented by Marbury, he offers only his own affidavit in support without a single item

13

of documentary corroboration. This evidentiary proffer pales in comparison to the over fifty exhibits accompanying Marbury's submissions and must be borne in mind when determining whether there exists sufficient admissible evidence for a reasonable trier of fact to find for Carl on the facts alleged. *See Arrington v. United States*, 473 F.3d 329, 343 (D.C. Cir. 2006) ("When a plaintiff relies entirely on his own self-serving testimony, which lacks any corroboration and is contradicted by all the available physical evidence, a court is not obligated to reward the plaintiff with a jury trial.").

Notwithstanding these deficiencies, the Court has painstakingly combed through Carl's Amended Counterclaim, opposition brief, numerous statements of facts, affidavit, and sur-reply to gain an understanding of the allegations underlying his claim.  Based on that understanding, and for all of the foregoing reasons, the Court finds that Marbury is entitled to summary judgment on all three of Carl's counterclaims.

## A. First Counterclaim (Legal Malpractice in connection with the Website Case)

Preliminarily, the Court notes that Carl's opposition brief and responsive statements of facts focus exclusively on the Bankruptcy Case. Carl has elected not to respond to the portion of Marbury's statement of facts addressing the Website Case; nor has he briefed any arguments relating to the Website Case. *See generally* Carl Stmt.; Carl Opp'n. What is more, Carl appears to concede that he cannot prevail on his First Counterclaim without expert testimony. *See* Carl Stmt., ECF No. [2], at 2 ("Carl acknowledges that, without expert testimony, his claims with regard to the *website case* may be properly subject to summary judgment. Hence, he will not respond to the statements contained in ¶¶ 1-30 of the *Marbury Facts* because the accuracy (or inaccuracies, of which there are many) of those paragraphs is now irrelevant.").

"It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997); *Stephenson v. Cox.*, 233 F. Supp. 2d 119, 121 (D.D.C. 2002)), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004). Further, under the Local Rules of this Court, "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). Accordingly, the Court, accepting as true those facts pertaining to the Website Case stated in Marbury's statement of facts, *see* Marbury Stmt. ¶¶ 2-30, concludes that Carl's First Counterclaim cannot survive without expert testimony because the conduct on which it is based is not so obvious as to be within the jury's common knowledge.

As background, Marbury prepared and filed Carl's complaint in the Website Case in the United States District Court for the Eastern District of Virginia against a website known as "bernardjcarl.com" and its sponsors – whom Carl alleged published defamatory statements that Carl failed to pay certain debts. *Id*. ¶¶ 2, 5, 7. In the end, four of Carl's five counts were dismissed and Carl was awarded compensatory and punitive damages totaling $30,000 on his libel claim. *See id.* ¶ 28. Carl now alleges, *inter alia*, that Marbury should never have pursued (or billed him for) two of the five counts because basic legal research would have revealed that those counts were futile, and that Marbury should have objected to the recommendations of a magistrate judge that Carl's cyber-squatting and cyber-piracy claims be dismissed. *See* Am. Countercl. ¶¶ 4-23.

The claims that formed the basis for the Website Case concern complicated issues of intellectual property law that are beyond the ken of even the average lawyer. And Carl's allegations in this case involve questions of the sufficiency of Marbury's research and litigation tactics which clearly necessitate an understanding of those intellectual property law issues, such as, for example: whether it was reasonable to not object to the recommendations of a magistrate judge that Carl's cyber-squatting and cyber-piracy claims be dismissed, and, if so, whether this would have made any difference as to whether Carl ultimately prevailed on those claims; whether a reasonable amount of legal research was conducted with respect to Marbury's determination to bring claims under the Lanham Act and related common law claims alleging unfair trade practices; and whether Marbury's actions as a whole in connection with its representation in the Website Case failed to meet the professional standards expected of a reasonable attorney.

As detailed in Marbury's statement of facts, Marbury made a number of tactical decisions in the course of representation of Carl in the Website Case and engaged Carl throughout this process. This given, and due to the complex nature of each of the inquiries catalogued above, it is apparent that this is not a situation where the propriety or impropriety of Marbury's conduct is "obvious from ordinary human knowledge and experience." *Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp.*, 457 S.E.2d 28, 33 (Va. 1995) (internal quotation marks omitted). It is likewise far from obvious that, had Marbury taken different tactics or engaged in additional research, the outcome of Carl's case would have changed. Accordingly, expert testimony is required on the issues of standard of care, breach, and proximate cause with respect to Carl's allegations concerning the Website Case. *Seaward*, 391 S.E.2d at 287. Because Carl has declined

to appoint an expert, the Court shall grant Marbury summary judgment on Carl's First Counterclaim, both on the merits and as conceded.

### B.  Second Counterclaim (Legal Malpractice in Connection with the Bankruptcy Case)

In 2007, Carl and his company, 6450 Kedleston, LLC, retained Marbury to represent them as creditors in the Bankruptcy Case to recover damages for the alleged breach of a real estate contract by the debtor. *See* Am. Countercl. ¶¶ 24-26. During the course of discovery in that case, evidence of potential fraud by the debtor was uncovered, suggesting that the debtor had received from a third-party benefactor cash and other assets that were not reported as part of the estate. *See id*. ¶¶ 28-32; Marbury Ans. ¶¶ 28-32. Based on the information learned from that discovery, Marbury and the trustee filed an adversary proceeding, seeking to vacate the debtor's discharge. Marbury Stmt. ¶ 43. Marbury subsequently withdrew as counsel prior to the resolution of the case and pursuant to a consent motion for withdrawal, entered on March 5, 2009. Am. Countercl. ¶ 52; Marbury Ans. ¶ 52. Thereafter, Carl appeared on behalf of himself and his company in the matter until May 4, 2009, at which time he obtained new counsel. Marbury Stmt. ¶¶ 53-54. On March 23, 2009, the trustee filed a motion seeking court approval of a settlement to resolve the adversary proceeding, which was opposed by Carl, and which the bankruptcy judge approved on May 7, 2009.  *Id*. ¶¶ 55-59; Carl Opp'n at 10. The adversary proceeding was closed on June 24, 2004. Marbury Stmt. ¶ 65. Carl alleges that because he was unable to reach beyond the debtor's reported assets, he received only $98,835 of the $800,000 to which he was entitled. Am. Countercl. ¶ 65.

The majority of the allegations underlying Carl's Second Counterclaim need not detain the Court long. In essence, Carl challenges the quality of Marbury's litigation preparation and strategy. *See*, *e.g.*, Am. Countercl. ¶¶ 36-38, 74 (failing to research and answer "specific

questions of bankruptcy law" critical to Carl's claims in the adversary proceeding on a timely basis); *id.* ¶¶ 46-48, 73 (being "woefully unprepared" for the deposition of the debtor and failing to ask critical questions therein); *id.* ¶¶ 60-61, 76 (failing to take the depositions of two allegedly key witnesses); *id.* ¶ 73 (failure to be adequately prepared for discovery); *id.* ¶ 76 (failing to "meet minimum professional standards in its representation of Carl"). Because all of these allegations involve nuanced questions regarding how a reasonable attorney should conduct itself in a complicated adversary action within a bankruptcy case, they clearly fall beyond the purview of the "common knowledge" exception and require expert testimony. *See, e.g., Umphreyville v. Gittins*, 662 F. Supp. 2d 501, 508 (W.D. Va. 2009) (applying Virginia law and holding that the plaintiff's malpractice claim based upon an alleged failure of his attorney "to adequately prepare for [an] Article 32 proceeding" and "adequately represent [his] interests during the Article 32 hearing" required expert testimony); *Shortt*, 2011 WL 4738657 at *3 (applying Virginia law and stating that expert testimony is required when the malpractice allegations "involve matters of litigation preparation and strategy – the prosecution of discovery, the selection and identification of witnesses, whether to interview witnesses prior to trial, the participation in discovery depositions of third-party witnesses on written questions, and written and oral advocacy in connection with submissions and exhibits to an adjudicatory tribunal").

Moreover, even assuming *arguendo* that these allegations amount to obvious breaches, Carl must nevertheless establish that the alleged conduct was the proximate cause of a concrete injury. *See, e.g., Baserva v. Remes*, Civ. A. No. 1:08cv997, 2009 WL 1392532, *2 (E.D. Va. May 18, 2009) (although breach and duty fell within the common knowledge exception, expert testimony was necessary to prove causation on the issue of whether the plaintiff's attorney's failure to file a motion to re-open immigration proceedings proximately caused the immigration

authorities to detain plaintiff). Where, as here, "the alleged malpractice occurs in litigation or litigation-related matters, the client cannot establish causation if he would not have prevailed in the prior action even if competently represented." *Shortt*, 2011 WL 4738657 at *4. Stated differently, "there must be sufficient evidence of causation to convince the fact-finder in the malpractice action that the plaintiff would have prevailed in the underlying case or proceeding absent the attorney's alleged negligence." *Id*.  Because Carl has failed to proffer an expert on the issue of whether he would have obtained a larger judgment in the Bankruptcy Case but for Marbury's allegedly deficient research and discovery, summary judgment must be granted with respect to these allegations. While Carl cursorily argues that the trustee – who ultimately moved for settlement of the Bankruptcy Case – could testify on the issue of causation, *see* Carl Opp'n at 23, the Court finds this argument misguided. Carl has not proffered the trustee as an expert witness, and the trustee therefore cannot testify as to how a complex bankruptcy proceeding may have played out differently had Marbury engaged, or not engaged, in certain conduct. *See* Fed. R. Evid. 701(c) (barring testimony of lay witnesses on areas of specialized knowledge within the scope of Rule 702). Further, any testimony as to how the trustee himself would have altered his litigation strategy would be pure speculation and therefore inadmissible. *See* Fed. R. Evid. 701(a) (witness testimony must be "rationally based on the witness's perception").

In addition to his more generalized attacks on Marbury's litigation performance, Carl also asserts several more specific allegations of malpractice, each of which also require summary judgment in Marbury's favor. The Court shall begin with Carl's allegation that Marbury failed to timely move to vacate the discharge of the debtor, *see* Am. Countercl. ¶¶ 39-43. This allegation requires dismissal for three reasons. First, this claim is without factual support, as Marbury filed the motion on December 30, 2008, exactly one day before the statute of limitations had run. *See*

Marbury Stmt. ¶ 43; Marbury Mem at 20. Second, insofar as Carl argues that waiting nearly one year after the discharge was ordered was unreasonable because time was of the essence due to the debtor's financial situation, it remains incumbent upon Carl to appoint an expert to explain what a reasonable amount of time to file would have been in light of the discovery in which Marbury and the trustee had been engaged during the time leading up to the filing. Finally, even assuming *arguendo* that Marbury's delay constituted an obvious breach of the applicable standard of care falling within the common knowledge exception, an expert would still be necessary on the proximate cause issue – *i.e.*, to explain what the effects of the delay in filing were. *See Baserva*, 2009 WL 1392532, *2. For all of the foregoing reasons, summary judgment must be granted as to Carl's allegations regarding the timeliness of the motion to vacate.

Carl also contends that Marbury coerced him into consenting to its withdrawal from the Bankruptcy Case by threatening to "expose the entire strategic plan" of the case in a contested motion for withdrawal. *See* Carl's Opp'n at 9; Carl Stmt., ECF No. [75-2] at 2; Carl Stmt., ECF No. [75-6] at ¶ 35; Carl Aff. ¶ 9. This allegation also requires dismissal for three reasons. First, the allegation is nowhere stated in the Amended Counterclaim; quite to the contrary, the Amended Counterclaim states only that "In January 2009, Marbury advised Carl that it intended to withdraw from the Bankruptcy proceedings and received an acknowledgment from Carl that he would not oppose Marbury's anticipated motion to withdraw." Am. Countercl. ¶ 49. It is well-established that a plaintiff cannot amend his complaint by including new claims in opposition to the defendant's motion. *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S.P.S.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003). Second, Carl has failed to provide *any* factual support for this broad allegation beyond the equally broad and conclusory assertion contained within his own affidavit, *see* Carl Aff. ¶ 19, which is contradicted by the evidence proffered by Marbury, *see* Marbury

Reply, Ex. 53 (e-mail from lead counsel to Carl discussing the parties' fee dispute and informing Carl that if he does not consent to the withdrawal motion, Marbury would "have to file [it] as a non-consent motion" such that the "judge may request that I be more specific as to the reasons I am withdrawing"). Accordingly, summary judgment is appropriate. *See Carranza v. Fraas*, 820 F. Supp. 2d 118, 124 (D.D.C. 2011) ("Summary judgment is appropriate when a plaintiff's claim is supported by only [his] own self-serving affidavit and is undermined by other evidence") (citations omitted); *see also Arrington*, 473 F.3d at 343 (D.C. Cir. 2006) ("When a plaintiff relies entirely on his own self-serving testimony, which lacks any corroboration and is contradicted by all the available physical evidence, a court is not obligated to reward the plaintiff with a jury trial."). Finally, even accepting the allegation as true, expert testimony is required to explain what the effects of Marbury's coercion were – *i.e.* whether Carl would have recovered more money in the Bankruptcy Case had Marbury not withdrawn in the manner that it allegedly did. *See Baserva*, 2009 WL 1392532, *2. Because Carl has failed to offer expert testimony on proximate cause, summary judgment must be granted with respect to this allegation.

Carl's next allegation fails for similar reasons. Carl contends that Marbury refused to turn over all discovery and pleadings files to him for a period of nearly three years under an "attorney's lien" until Marbury's disputed legal bills were fully paid – an allegation which Marbury disputes. *See* Carl Opp'n at 2, ¶ 9; Carl Stmt., ECF No. [75-3] at 1, 2, 4, 5; Carl Stmt., ECF No. [75-6] at ¶¶ 47-49; Carl Stmt., ECF No. [75-4] at ¶¶ 10-14; Carl Aff. ¶¶ 22-23; Marbury Reply at 4. However, Carl nowhere asserts this allegation in his Amended Counterclaim, and as already noted, a plaintiff cannot amend his complaint by including new claims in opposition to the defendant's motion. *Arbitraje Casa de Cambio*, 297 F. Supp. 2d at 170. Furthermore, Carl once again fails to present anything other than his own affidavit to

support this allegation. Nor does he produce any documentation reflecting a request for files, or any affidavit or other documentation showing that his replacement attorney ever complained to Marbury about this alleged "attorney's lien" or requested documents that had not been turned over. Finally, even if the Court were to find that Carl has proffered sufficient evidence to show that this fact is in dispute, the lack of expert testimony on the issue of proximate cause is nevertheless again fatal to his claim. *See Baserva*, 2009 WL 1392532, *2. The Court would be hard-pressed to conclude that the average juror could perceive the effects of a lack of access to certain documents during the final stages of a multi-party adversary action within a complex bankruptcy case. Accordingly, summary judgment must be granted with respect to Carl's "attorney lien" allegation.

Carl also alleges that Marbury rescheduled the deposition of Frank Coviello, the attorney of the allegedly "secret" benefactor who had been funneling unreported funds to the debtor, for a date after Marbury's withdrawal from the case but failed to advise Carl as to the rescheduled date, causing Carl to forfeit that discovery. *See* Am. Countercl. ¶¶ 53-59; Carl Opp'n at 2, 9, 10, 13, 21, 24; Carl Stmt., ECF No. [75-2] at 2-3; Carl Stmt., ECF No. [75-3] at 4; Carl Stmt., ECF No. [75-6] at ¶¶32-34. The parties do not dispute that the Coviello deposition was initially scheduled for January 29, 2009, and that on January 21, 2009 – after Marbury told Carl that it intended to withdraw from the case, but before the motion to withdraw had been filed – Marbury contacted the other counsel in the case and that counsel ultimately rescheduled the deposition for March 9, 2002 (four days after Marbury formally withdrew). *See* Marbury's Stmt. ¶44-49; Carl's Opp'n at 9. The parties do appear to dispute, however, whether Marbury informed Carl as to the rescheduled date. *See* Marbury's Stmt. ¶ 51; Carl's Stmt., ECF No. [75-2] at 3. Because there is no documentary evidence – beyond the self-serving affidavits filed by the respective parties –

22

upon which the Court can determine whether or not Carl was informed as to the rescheduled date, the Court finds that this fact remains genuinely disputed.

However, even accepting Carl's allegations as true and further assuming *arguendo* that Marbury's failure to inform Carl of the rescheduled deposition constitutes an obvious breach of the applicable standard of care within the common knowledge exception, the Court nevertheless finds that Carl cannot prevail on these allegations in the absence of expert testimony that the alleged misconduct was the proximate cause of a legally cognizable injury. *See Baserva,* 2009 WL 1392532, at *2. Expert testimony would be particularly important on this issue in view of the fact that the Coviello deposition was but one piece of discovery in a complex bankruptcy proceeding involving multiple parties – including a trustee whom, in fact, was aligned with Carl in moving for discovery from Coviello and filing the adversary proceeding in the first instance. *See* Marburty Stmt. ¶¶ 41-43. The impact, if any, that a deposition by Carl of Coviello, had it occurred, would have had on Carl's ultimate recovery in the case is not so obvious as to fall within the common knowledge of the average juror.   Accordingly, summary judgment is required.

Finally, Carl contends that Marbury failed to keep him informed of negotiations regarding settlement of the claims against the third party defendants in the Bankruptcy Case. *See* Am. Countercl. at ¶¶ 64, 77; Carl Opp'n at 2, 10, 18, 19 , 21; Carl Stmt., ECF No. [75-6] at ¶38. However, the record reflects that Marbury did, in fact, forward to Carl e-mail correspondence reflecting the status of the settlement negotiations and encouraging Carl to contact the trustee's counsel directly, such that Carl could have easily informed counsel of his views on settlement. *See* Marbury Mem., Ex. 33 (E-mail Chain dated February 26, 2009). While the adequacy of Marbury's communications to Carl on this issue may remain contested, such determination

requires an understanding of the applicable standard of care in the context of bankruptcy settlement discussions which is undoubtedly beyond the ken of the average juror. Accordingly, the Court finds that this allegation, too, cannot survive absent expert testimony and therefore summary judgment is warranted.

## C. Third Counterclaim (Breach of Fiduciary Duty)

Carl's Third Counterclaim alleges that Marbury breached its fiduciary duty to Carl in the course of its representation of him in the Bankruptcy Case. Under Virginia law, claims of legal malpractice and breach of fiduciary duty of an attorney, while sounding in tort, are both considered breach of contract claims. *O'Connell v. Bean*, 556 S.E.2d 741, 743 (Va. 2002). *See also Oleyar v. Kerr*, 225 S.E.2d 398, 399-400 (Va. 1976) ("an action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract"). Further, where, as here, a malpractice claim and a breach of fiduciary claim allege the same failure to provide adequate legal services pursuant to an attorney-client contract, these claims are one and the same. *See O'Connell*, 556 S.E.3d at 743.

Accordingly, the Court shall dismiss Carl's Third Counterclaim as duplicative of the legal malpractice claim asserted in Carl's Second Counterclaim, which has now been dismissed. *See, e.g., Hewlette v. Hovis*, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004)*; accord General Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP*, 357 F. Supp. 2d 951, 961-62 (E.D. Va. 2005) (applying Virginia law, dismissing a claim for breach of fiduciary duty as a "mere disguise[ ] for the plaintiffs' legal malpractice claims").

## IV. CONCLUSION

The Court has considered all other arguments asserted by Carl in his opposition brief and sur-reply and finds them without merit. Accordingly, for all of the reasons stated herein,

Marbury's motion for summary judgment is GRANTED and Carl's Amended Counterclaim is dismissed with prejudice in its entirety.

An appropriate Order accompanies this Memorandum Opinion.